# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNIFICATION TECHNOLOGIES LLC, | |
| Plaintiff, | Civ. A. No. 6:20-CV-500 |
| vs. | |
| MICRON TECHNOLOGY, INC., et al., | |
| Defendants | |

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## (LETTER ROGATORY)

To:     The Judicial Authorities of Taiwan

The United States District Court for the Western District of Texas presents its compliments to the judicial authorities of Taiwan and has the honor to request international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter, namely, an action for patent infringement between **Unification Technologies LLC**, a Texas limited liability company ("UTL"), and **Micron Technology, Inc.,** a Delaware corporation; **Micron Semiconductor Products, Inc.,** an Idaho corporation; and **Micron Technology Texas LLC**, an Idaho limited liability company (together, "Micron"). Trial is currently set to begin on June 13, 2022 in Waco, Texas, USA.

The Court requests the assistance described in this letter as necessary in the interests of justice. The assistance requested is that the appropriate judicial authorities of Taiwan compel the below-named persons to produce the documents and provide the testimony described below.

<u>PERSONS FROM WHOM EVIDENCE IS SOUGHT</u>

**Silicon Motion, Inc.**
8F-1, No. 36, Taiyuan Street
Jhubei City
Hsinchu County
Taiwan

Silicon Motion, Inc. is represented by:

David J. Tsai
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998

**Phison Electronics Corp.**
No. 1, Qun Yi Road
Jhunan, Miaoli
Taiwan

Both of these corporations are organized under the law of Taiwan.

<u>THE PARTIES AND THEIR REPRESENTATIVES</u>

UTL is represented in this civil action by:

Edward R. Nelson III
Robert A. Delafield II
Nelson Bumgardner Conroy PC
3131 West 7th St., Suite 300
Fort Worth, Texas 76107 USA
Email: ed@nelbum.com, bobby@nelbum.com

Jonathan H. Rastegar
Nelson Bumgardner Conroy PC
2727 N. Harwood St., Suite 250
Dallas, Texas 75201 USA
Email: jon@nelbum.com

Timothy E. Grochocinski
Nelson Bumgardner Conroy PC
15020 S. Ravinia Ave., Suite 29
Orland Park, Illinois 60462 USA
Email : tim@nelbum.com

UTL is also represented in connection with these letters rogatory by:

Theodore J. Folkman
Folkman LLC
53 State St., Suite 500
Boston, Massachusetts 02109 USA
Email: ted@folkman.law

UTL's representative in Taiwan is:

Christopher M. Neumeyer
正浩外國法事務律師事務所
Attorney of Foreign Legal Affairs
P.O. Box 118-603
Taipei, Taiwan, R.O.C.
Email: chrisneumeyer@asialaw.biz

Micron is represented in this civil action by:

Thomas M. Melsheimer
Natalie Arbaugh
Qi Peter Tong
Winston & Strawn LLP
2121 N. Pearl St., Suite 900
Dallas, Texas 75201 USA
Email: tmelsheimer@winston.com, narbaugh@winston.com, ptong@winston.com

Katherine Vidal
Michael R. Rueckheim
Winston & Strawn LLP
275 Middlefield Rd., Suite 205
Menlo Park, CA 94025 USA
Email: kvidal@winston.com, mrueckheim@winston.com

Vivek V. Krishnan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, Illinois 60601 USA
Email: vkrishnan@winston.com


## BACKGROUND

UTL, the plaintiff in the action, is the owner of U.S. Patent Nos. 8,762,658 ("the '658

Patent"), 8,533,406 ("the '406 Patent"), and 9,632,727 ("the '727 Patent", collectively, "the

Patents"). The Patents, in general terms, relate to managing data on solid-state devices such as Flash memory drives in order to make certain storage functions more efficient.

UTL claims that Micron infringed its Patents in violation of Title 35, Section 271(a) of the United States Code by making, using, selling, offering for sale, or importing into the United States products that are covered by claims of the Patents. UTL claims that Micron's products, for example the Micron 5200 Series SSD, infringe the '658 Patent because they contain a non-volatile storage medium such as flash memory, a flash translation layer, and circuitry and associated software that stores data in response to receiving certain commands such as the TRIM command, such that data is stored in response to the command indicating that certain data is erased. UTL claims that Micron's products, for example the Micron Series 5200 Series SSD, infringe the '406 Patent because they utilize flash memory, a flash translation layer that maps one or more logical block addresses to physical address for certain data and contains circuitry that is configured to receive a TRIM command that indicates and records that data stored in the 3d TLC NAND flash memory at the location specified by the logical block addresses indicated in a TRIM command has been deleted and can be erased. UTL also claims that Micron's products, for example the Micron 5200 Series SATA SSDs, infringe the '727 Patent because they include solid-state storage memory such as NAND flash memory along with a controller, a flash translation layer, and circuitry and associated software that assigns logical addresses to physical addresses used to store data on the solid-state storage memory and also removes those assignments in response to commands such as TRIM from the operating system. Micron denies these allegations and asserts several affirmative defenses. Micron has also brought a counterclaim seeking a Declaration that it has not infringed the Patents and that the Patents are invalid.

Silicon Motion, Inc. ("SMI") and Phison Electronics Corp ("Phison") created source code that is used in the controllers that are incorporated in the products that UTL alleges infringe its patents. Micron, does not manufacture the controllers and does not have the source code in its possession. UTL has asserted that the text of the source code is of primary importance to prove some of its claims of patent infringement. This Court finds that the source code would be relevant to the claims asserted in this civil action.

## DOCUMENTS TO BE OBTAINED

(1)    All source code used by the controllers that SMI provided to Micron for use in the following solid state drives ("SSDs"): Micron 2100, Micron 2100 AT, Micron BX500, Micron MX500, Micron P1, Micron X6, and Micron X8 Series.

(3)    All source code used by the controllers that Phison provided to Micron for use in the following SSD: Micron P2 Series.

## TESTIMONY TO BE OBTAINED

This Court also requests that the appropriate judicial authorities of Taiwan order SMI and Phison, each through an authorized representative with personal knowledge of the source code, to answer the following questions under oath, in order to authenticate the source code:

(1) QUESTION FOR SMI

    a.   Is the source code that SMI has produced a true and correct copy of the source code that it understands is used in the controllers incorporated in the following series of Micron SSD devices: Micron 2100, Micron 2100 AT, Micron BX500, Micron MX500, Micron P1, Micron X6, and Micron X8?

(2) QUESTION FOR PHISON

a. Is the source code that Phison has produced a true and correct copy of the source code that it understands is used in the controllers incorporated in the Micron P2 Series SSD devices?

## RIGHTS OF THE WITNESSES

Witnesses have the right to refuse to produce evidence that is privileged, either under US federal law or under the laws of Taiwan. Under US law, the most commonly asserted privileges are the attorney-client privilege, which, in general terms, permits a client to refuse to provide evidence concerning communications with its lawyer for the purpose of obtaining legal device, and (for natural persons, but not for corporations) the privilege against self-incrimination, which, in general terms, permits a person to refuse to testify if the testimony might incriminate himself. It does not appear likely to this Court that any privilege under US law would apply with respect to the discovery requests described above.

## SPECIAL PROCEDURES

This Court has entered a Protective Order in this case, which provides protections for parties or non-parties that produce confidential and proprietary information or trade secrets in the course of this litigation. A copy of the protective order is attached. The Protective Order provides specific protections for parties or non-parties producing source code. The protections are described in detail beginning at paragraph 13 of the Protective Order.

Due to difficulties of international travel during the COVID-19 pandemic, this Court requests that SMI and Phison be ordered to produce the source code for inspection in accordance with the procedures outlined in the Protective Order on a date to be agreed by each company separately and counsel for the parties within one month of issuance of an order for production by

the appropriate judicial authority of Taiwan, or else at a location, within or outside of Taiwan, to be determined by the appropriate judicial authorities of Taiwan.

This Court offers assurances to the appropriate judicial authorities of Taiwan that it understands and takes very seriously Taiwanese companies' interest in the confidentiality of their source code and will strictly enforce the Protective Order.

This Court further requests that the testimony of the witnesses be given in court, under oath, and that the answers be transcribed verbatim. The Court further requests that representatives of UTL and Micron be permitted to put questions to the witnesses concerning the authenticity of the source code produced.

This Court further requests that the parties' representatives listed above be given advance notice, by email, of the time and place of all proceedings to be held in connection with this Letter Rogatory and of the time and place for the witness's testimony.

<u>RECIPROCITY AND COSTS</u>

This Court thanks the authorities of Taiwan for their assistance in this matter and expresses its willingness to provide similar judicial assistance to the judicial authorities of Taiwan in similar cases and in other civil or commercial matters. The Court refers in particular to Title 28, Section 1782 of the United States Code, a statute that authorizes a United States court, on application by a foreign judicial authority or by any interested person, to issue an order authorizing service of a subpoena for documents or for testimony.

This Court is willing to issue orders to compel the plaintiff to reimburse the judicial authorities of Taiwan for costs incurred in executing this letter rogatory.

_____
Hon. Alan D. Albright, US District Court Judge
U.S. District Court for the Western District of Texas

UNITED STATES DISTRICT COURT<br>
FOR THE WESTERN DISTRICT OF TEXAS<br>
WACO DIVISION

| | | |
|---|---|---|
| **UNIFICATION TECHNOLOGIES LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| **MICRON TECHNOLOGY, INC.,** | ) | **Case No. 6:20-CV-500-ADA** |
| **MICRON SEMICONDUCTOR** | ) | |
| **PRODUCTS, INC.,** | ) | |
| **MICRON TECHNOLOGY TEXAS, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] AGREED PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Unification Technologies LLC ("Plaintiff" or "UTL"), and Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC ("Defendants" or "Micron") (collectively, "the Parties") have stipulated and agreed to the terms and entry of, and the Court hereby orders the Parties to abide by, this Protective Order.

This Protective Order is issued to facilitate document disclosure and production under the Local Rules of this Court and the Federal Rules of Civil Procedure. Information subject to this Protective Order may be used only for the purposes of a lawsuit governed by this Protective Order. Unless modified pursuant to the terms contained in this Protective Order, this Protective Order shall remain in effect through the conclusion of each lawsuit governed by this Protective Order.

In support of this order, the Court finds that:

1)      Documents and information containing confidential, proprietary business information, and/or trade secrets ("Confidential Information") that bear significantly on the Parties' claims or defenses are likely to be disclosed or produced during the course of discovery in each lawsuit governed by this Protective Order;

2)      Counsel for the Party receiving Confidential Information may presently be without sufficient information to accept the representation(s) made by the Party or Non-Party producing Confidential Information as to the confidential, proprietary, and/or trade secret nature of such Confidential Information; and

3)      To protect the respective interests of the Parties and Non-Parties and to facilitate the progress of disclosure and discovery in each lawsuit governed by this Protective Order, the Court will issue this Protective Order.

IT IS, THEREFORE, ORDERED THAT:

## Definitions

A.      "Party": any party to the above-captioned action ("Action"), including all of its officers, directors, employees, and outside counsel (and their support staffs).

B.      "Plaintiff": Unification Technologies LLC, including all of its officers, directors, employees, and outside counsel (and their support staffs).

C.      "Defendants": Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC, including all of their officers, directors, employees, and outside counsel (and their support staffs).

D.      "Material": all information, documents, items and things produced, served, made available, or otherwise provided in this Action (whether paper, electronic, tangible or otherwise) by the Parties or by Non-Parties.

E.      "Producing Party": a Party or Non-Party that produces Material in this Action.

F.      "Receiving Party": a Party that receives Material from a Producing Party in this Action.

G.      "Designating Party": a Party or Non-Party that designates Material as "CONFIDENTIAL," "CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY" or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" in this Action.

H.      "Non-Party": any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

I.      "Data   Breach"   means   any   accidental,   unlawful,   or   unauthorized destruction,   alteration,   disclosure,   loss,   theft,   copying,   use,   modification,   disposal, compromise, or access to Protected Material or any act or omission that compromises or undermines the physical, technical, or organizational safeguards put in place by Receiving Party in processing or possessing a Producing Party's Protected Material.

J.      "Circuit  Schematic  Files":  a  computer  file  or  document  containing  a  graphical representation of an integrated circuit that shows the connections between the various components of the circuit. Circuit Schematic Files include complete hierarchical printouts (*e.g.*, in PDF format) of schematic and logical netlist views that are used for abstract level simulation, but not for device fabrication. Circuit Schematic Files do not include Physical Design Files.

K.      "Physical  Design  Files":  a  computer  file  or  document  that  shows  the physical  arrangement  of  the  components  of  the  integrated  circuit,  also  called  the  circuit layout.  Physical  Design Files are typically the final output product of integrated circuit design that is used by a foundry to fabricate an integrated circuit. Physical Design Files may include, for example, GDS (Graphic Database System), GDSII stream format, DEF (Design Exchange Format),  and  LEF  (Library  Exchange Format) files, but do not include Circuit Schematic Files.

L.      "HDL Source Code": a computer file or files that contain electronic hardware descriptions in a hardware description language, such as Verilog or VHDL. HDL Source Code refers only to native electronic files that are in a human readable format suitable for input to an assembler, compiler, interpreter, synthesis tool, or other translator.

M.      "Source  Code":  a  compilation  of  computer  instructions  and  data  definitions expressed in a human-readable form suitable for input to an assembler, compiler, interpreter, or other translator, including HDL Source Code.

N.      "Source Code Material": all software, firmware, Source Code, HDL Source Code, Circuit Schematic Files, or Physical Design Files.

O.      "CONFIDENTIAL" Material: Material the Designating Party believes in good faith is not generally known to others, and that the Designating Party (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence, (ii) believes in good faith is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy, or (iii) believes in good faith to constitute or to contain confidential and/or proprietary information not otherwise known or available to the public. CONFIDENTIAL Material shall include all Material referring or relating to the foregoing, including but not limited to copies, summaries, and abstracts of the foregoing. Any Party may use the "CONFIDENTIAL" designation only if, in the good faith belief of such Party and its counsel, the unrestricted disclosure of such information and/or Materials could be potentially harmful to the business or operations of the party.

P.      "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material: Material the Designating Party believes in good faith is not generally known to others and has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury, and which the Designating Party (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence, (ii) believes in good faith is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy, or (iii) believes in good faith constitutes proprietary financial, research, development, technical, or commercially sensitive competitive information that the Producing Party maintains as highly confidential in its business or the disclosure of which is likely to cause harm to the competitive position of the Producing Party. CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall include all Material referring or relating to the foregoing, including but not limited to copies, summaries, and abstracts of the foregoing.

Q.     "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material: Material constituting Source Code Material as produced pursuant to Paragraph 13 below or as incorporated into, for example, documents, answers to interrogatories, technical expert reports, or deposition testimony. RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall include all Material referring or relating to the foregoing, including but not limited to copies, summaries, and abstracts of the foregoing. References to the Bates number of a previously printed page of RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material are not RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material.

R.     "Involved In The Prosecution Of Patents Or Patent Applications": participation in any way on behalf of a patent owner/patent applicant or other person or entity having ownership, license, or other financial interest in the patent or in the patent or reissue application, in (i) reexamination proceedings before the United States Patent and Trademark Office or any foreign agency responsible for examining or issuing patents (which, for clarity, does not include review proceedings before the Patent Trial and Appeal Board), or (ii) drafting, reviewing, approving, or prosecuting any portion (*e.g.*, any claim, any figure, or any specification language) of a patent application (including, but not limited to, provisional, non-provisional, original, continuation, continuation-in-part, divisional, reissue, and/or continued prosecution applications) or any portion of any amendment, response, reply, or other paper submitted to the United States Patent and Trademark Office or any foreign agency responsible for examining or issuing patents (which, for clarity, does not include review proceedings before the Patent Trial and Appeal Board).

S.     "Protected Matters": Confidential Information, including but not limited to documents, deposition testimony, discovery responses, summaries of Confidential Information or briefs discussing or containing Confidential Information, as well as copies thereof, disclosed or produced by any Producing Party in a lawsuit governed by this Protective Order. No Material shall be deemed Protected Matters if:

(1)      it is in the public domain at the time of disclosure;

(2)      it becomes part of the public domain;

(3)      the Receiving Party can show it was in the Receiving Party's rightful and lawful possession at the time of disclosure;

(4)      the Receiving Party lawfully received it from a Non-Party without restriction as to disclosure, provided such Non-Party has the right to make the disclosure to the Receiving Party; or

(5)      the Receiving Party can show it was independently developed by the Receiving Party after the time of disclosure by personnel who did not have access to the Producing Party's Protected Matters.

## **Confidential Information**

1.      Except as otherwise indicated below, Protected Matters may be designated by a Producing Party or Designating Party as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" as described below.

2.      Protected Matters and any information contained therein shall not be used or shown, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, except as provided in this Protective Order.

3.      Protected Matters designated as "CONFIDENTIAL" and any information contained therein may be disclosed (and copies may be made to facilitate this disclosure) only to the following persons ("Qualified Persons"):

(a)      Outside counsel of record in a lawsuit governed by this Protective Order for the Party receiving Protected Matters;

(b)      Any four (4) in-house counsel of a Receiving Party who have responsibility for maintaining, defending, or evaluating this litigation. No CONFIDENTIAL Material shall be

disclosed to such in-house counsel until the individual has signed the Confidentiality Undertaking attached hereto as Exhibit A, thereby declaring that he or she has read and understands this Protective Order and agrees to be bound by its provisions. Such written agreement shall be retained by counsel for the Receiving Party;

(c)     Administrative staff, *e.g.*, paralegals and secretaries, working for counsel defined in Paragraphs 3(a) and 3(b) (excluding experts and investigators) assigned to and necessary to assist counsel in the preparation and trial of this action;

(d)     The Court and Court personnel;

(e)     The Mediator;

(f)     Actual or potential independent experts or consultants (including translators) who have been approved in accordance with Paragraph 14, including signing a document agreeing to be bound by the terms of this protective order (at Exhibit A hereto) and whose identity, as well as all present and prior relationships or affiliations, is provided to the Producing Party whose Protected Matters are to be disclosed for purposes in accordance with Paragraph 14;

(g)     Personnel of graphics, litigation support (including stenographic reporters, videographers, and/or their staff), and trial/jury consulting firms, including any mock jurors, engaged by a Party or its attorneys in connection with a lawsuit governed by this Protective Order who have signed or whose representative has signed Exhibit A hereto prior to any disclosure of Protected Matters; and

(h)     the author, addressee, or recipient of a document containing the information in a deposition or at trial; and to the extent the author, addressee or recipient is a former employee of the Producing Party, only if he or she signs the Confidentiality Undertaking.

4.     Protected Matters designated as "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" shall be restricted in circulation to Qualified Persons described in paragraphs 3(a), 3(c), 3(d), 3(e), 3(f), 3(g), and 3(h) above, and two (2) in-house counsel of a Receiving Party who have

responsibility for maintaining, defending, or evaluating this litigation if the in-house counsel signs the Confidentiality Undertaking and provides it to opposing counsel.

5.      Protected Matters designated as "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" shall be restricted in circulation to Qualified Persons described in paragraphs 3(a), 3(c) (excluding employees of 3(b)), 3(d), 3(e), 3(f), 3(g) (excluding mock jurors), and 3(h).

6.      To the extent that Protected Matters or information contained therein is used in depositions, at hearings, or at trial, such documents or information shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony and/or trial testimony referring to the Protected Matters or information contained therein.

7.      This Protective Order shall apply to the Parties and any Non-Party from whom discovery may be sought and who desires the protection of this Protective Order. Thus, any Non-Party requested or required to produce or disclose information in this proceeding, through subpoena or otherwise, may designate such information pursuant to the terms of this Protective Order.

8.      In the event a Receiving Party wishes to use any "CONFIDENTIAL" or "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material in any affidavits, briefs, memoranda of law, or other papers filed or introduced in Court in a lawsuit governed by this Protective Order, such information used therein shall be filed under seal with the Court. "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material must also be filed under seal in compliance with Paragraph 13(i).

9.      Nothing in this Protective Order shall preclude any Receiving Party to a lawsuit governed by this Protective Order or their attorneys from (1) showing a document prepared prior to the filing of this action and designated as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" to an individual in a deposition or at trial who appears as an author, addressee or

recipient of a copy of the document on the document's face, and to the extent the author, addressee or recipient is a former employee of the Producing Party, only if he or she signs the Confidentiality Undertaking, or (2) disclosing or using, in any manner or for any purpose, any information or documents from the Party's own files which the Party itself has designated as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED    CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" to an individual employed by the Party.

10.     The Receiving Party of any Protected Material shall have and maintain appropriate physical, organizational, and technical processes, security standards, guidelines, controls, and procedures to protect against a Data Breach ("Appropriate Safeguards"), and shall ensure that its professional vendors, experts and any other person or entity that receives Protected Material pursuant to this Stipulated Protective Order implements and maintains Appropriate Safeguards.

<u>**Depositions**</u>

11.     Confidential Information disclosed at (a) the deposition of a Party or one of its present or former officers, directors, employees, agents or independent experts retained by counsel for the purpose of a lawsuit governed by this Protective Order, or (b) the deposition of a Non-Party, may be designated by any Producing Party (including the Non-Party disclosing any such Confidential information) as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material by indicating on the record at the deposition that the testimony is "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material and is subject to the provisions of this Protective Order. Any Producing Party (including the Non-Party having disclosed such Confidential Information) may also designate information disclosed at such deposition as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material by notifying

all of the Parties in writing at the time of deposition or before twenty-one (21) days after receipt of the transcript. Each Receiving Party shall attach a copy of such written notice or notices to the face of the transcript and each copy thereof in his possession, custody, or control. Unless previously designated in accordance with this Protective Order, all deposition transcripts shall be treated as "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" for a period of twenty-one (21) days after the receipt of the transcript.

12.     At any time after the delivery of Protected Matters, counsel for the Receiving Party or Parties receiving the Protected Matters may challenge the designation of all or any portion thereof, including the level of the confidentiality designation, by providing written notice thereof to counsel for the Producing Party disclosing or producing the Protected Matters. If the Parties do not resolve the dispute within fourteen (14) days of the Producing Party receiving written notice of the challenge, the Receiving Party or Parties receiving the Protected Matters wishing to contest the designation may file a motion with the Court with regard to any Protected Matters in dispute. Upon the filing of such a motion by the Receiving Party or Parties, the Producing Party or Parties producing the Protected Matters shall have the burden of establishing that the disputed Protected Matters are entitled to confidential treatment at the designated level. All Protected Matters are entitled to confidential treatment pursuant to the terms of this Protective Order until and unless the Parties formally agree in writing to the contrary or a contrary determination is made by the Court as to whether all or a portion of the Protected Matters are entitled to confidential treatment at the designated level.

**"Restricted Confidential – Outside Counsel's Eyes Only" Material**

13.     Protected Matters designated as "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" shall be subject to additional protections given the particularly sensitive nature of the information, unless otherwise advised by the Producing Party:

(a)     All RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall be made available by the Producing Party to the Receiving Party's outside

counsel and/or experts who have been approved according to Paragraph 14 either in searchable PDF format or in native format in a secure room on a secured computer without Internet access or network access to other computers and with all input/output ports (such as USB) blocked, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material outside or away from the computer on which the RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material is provided for inspection (the "Secure Computer"). The Secure Computer will be located at one of the three following locations: (i) the offices of outside counsel for the Producing Party in this Action (*e.g.,* Winston & Strawn in Dallas, Texas); (ii) the offices of Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC within the Western District of Texas; or (iii) at any other location mutually agreed upon by counsel for the Receiving Party and the Producing Party.

The parties agree to meet and confer if the Secure Computer was not manufactured within the past five (5) years and thereby slows down the inspection process. The Producing Party shall provide the Receiving Party with information explaining how to start, log on to, and operate the Secure Computer in order to access the produced RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material on the Secure Computer. After the Secure Computer has been prepared and provided to the Receiving Party, the Producing Party shall thereafter provide access to the Secure Computer during regular business hours on reasonable notice provided in writing by the Receiving Party (which shall be no less than at least five (5) business days' notice) and may be accessed by the Receiving Party using this process throughout the case up to and including trial. This written notice from the Receiving Party shall identify in writing to the Producing Party the persons who will be conducting the inspection or will be present during the inspection. The Producing Party shall install software tools that are customary for viewing and searching the Material on the Secure Computer. The Producing Party shall provide a list of the tools that it intends to install on the Secure

Computer twelve (12) business days before the Secure Computer is made available for inspection. The Receiving Party's outside counsel and/or experts who have been approved according to Paragraph 14 may request that commercially available software tools reasonably necessary to assist in reviewing and searching the electronic information be installed on the Secure Computer. The Receiving Party must provide the Producing Party with the software tool(s) and evidence sufficient to establish the existence of a license that authorizes such installation at least five (5) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Secure Computer. For emphasis, it should be noted that the tools for reviewing RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material may not be used to circumvent the protections of this Protective Order in any way. Moreover, the Receiving Party shall not at any time use any compilers, interpreters or simulators in connection with the Producing Party's RESTRICTED CONFIDENTIAL-OUTSIDE COUNSEL'S EYES ONLY Material, and in no event shall the Receiving Party cause tools to be installed on the Secure Computer that have the effect of altering, modifying, deleting, copying, or otherwise permitting the reproduction or removal of such RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material. In addition, the Receiving Party shall not be permitted to bring electronic devices, including but not limited to hard drives, cellular phones, PDAs, cameras, and voice recorders, into the location of the Secure Computer with the following exception. Except as provided here and in Paragraph 13(i), no electronic copies of RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall be made.

(b) The Receiving Party's outside counsel and/or experts approved according to Paragraph 13 shall be entitled to take notes (electronic or nonelectronic) relating to the Source Code Material but may not copy the Source Code Material into such notes. To the extent the Receiving Party desires to take notes electronically, the Producing Party shall allow the Receiving Party to take notes on the Secure Computer or provide a note-taking computer (e.g., a computer, which is distinct

12

from the Secure Computer, that is not linked to any network, including a local area network ("LAN"), an intranet, or the Internet, and has image making functionality of any type disabled, including but not limited to camera or video functionality) ("Note-Taking Computer") with a current, widely used word processing program for the Receiving Party's use in taking such notes. The Note-Taking Computer shall be used for the sole purpose of note-taking and shall be retained by the Producing Party. The Note-Taking Computer shall have disk encryption and be password protected. Other than the Note-Taking Computer, use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the Secure Computer.

(c)     Upon request, such notes shall be printed and promptly given to the Receiving Party to retain, and the computer cleared of such notes. Any such printed notes shall be designated as and treated as RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY material. Any printed notes shall also be treated as paper copies of RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY material, except that printed notes will not count toward the Receiving Party's page limits in Paragraph 13(d) below. Rather, printed notes shall be limited to a total of one hundred (100) pages. In the event this limit is inadequate for the Receiving Party, the Parties agree to negotiate in good faith to establish a reasonable extension on that limit. The Note-Taking Computer shall have no features which would hinder the complete clearing of the Receiving Party's notes after such notes have been printed. Any such notes shall not include copies or reproductions of portions of the Source Code Material, however, the notes may contain filenames, directory names, module names, or procedure names. No copies of all or any portion of the Source Code Material may leave the room in which the Source Code Material is inspected except as otherwise provided herein. Further, no written or electronic record of the Source Code Material is permitted except as otherwise provided herein. The Producing Party will not retain a copy of any

13

printed notes.  The log of such notes need not be produced to any other party absent Court Order (e.g., potentially in connection with a Protective Order violation motion). During any review of Material on the Secure Computer, the Producing Party may visually monitor the activities of the Receiving Party's representatives from outside the room where the Secure Computer is located, but the Producing Party shall not make any recording, including any audio, video or digital recording, of the activities of the Receiving Party's representatives. However, in the event that any Material is reviewed on a Secure Computer at Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC using a software review tool licensed to Micron, a Micron employee shall operate such software review tool in cooperation with the Receiving Party to facilitate the review.

The Receiving Party shall also be entitled to take depositions of the Producing Party's experts and other witnesses with access to the Source Code Material on the Secure Computer during the deposition upon request prior to the deposition. To the extent there is any objection by the Producing Party to hold a deposition where the Secure Computer is located, the Parties shall meet and confer to determine another location mutually agreed upon by counsel for the Receiving Party and the Producing Party to hold the deposition where the witness can access Source Code Material.

(d) Under no circumstances are printouts or copies of RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material to be made except by the Producing Party. At the request of the Receiving Party, the Producing Party shall provide paper copies ("Original Printouts") of portions of the Source Code Materials on the Secure Computer that are requested by the Receiving Party and are reasonably necessary to facilitate the Receiving Party's preparation of court filings, expert reports, and trial exhibits. The Parties acknowledge and agree that the purpose of the protection herein would be frustrated by printing large portions of code for review and analysis elsewhere. The total number of pages of "Original Printouts" shall not exceed 250 pages. If the Receiving Party has already received a total of 250 pages and believes that additional pages are

reasonably required for its case preparation, the Parties will follow the meet and confer requirements outlined below. Original Printouts that exceed 25 continuous pages shall be presumed excessive unless the Receiving Party provides a reasonable justification that such printed portions are necessary. The Producing Party shall Bates number, copy, and label "RESTRICTED   CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" material on any Original Printouts. If the Producing Party objects that the portions requested to be printed are excessive and/or not reasonably necessary to any case preparation activity, the Producing Party shall make such objection known to the Receiving Party within five (5) business days. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party or the Producing Party shall be entitled to seek a Court resolution of whether the print request is reasonably necessary to any case preparation activity as provided herein. The day after the completion of the meet and confer process, the Parties shall contact the Court's clerk to schedule a conference. The Producing Party must use its power to object reasonably and may not, for example, make an objection simply to introduce delay or attempt to discover privileged information. In the absence of any objection, or upon resolution of any such dispute by the Court, the Producing Party shall provide via overnight mail one copy set of such Original Printouts to the Receiving Party within five (5) business days. The Original Printouts shall constitute part of the RESTRICTED  CONFIDENTIAL  - OUTSIDE COUNSEL'S EYES ONLY Material produced by the Producing Party in this action.

(e)      Unless otherwise agreed in advance by the Parties in writing, the Receiving Party's outside counsel and/or experts who have been approved according to Paragraph 13 shall remove all notes, documents, and all other materials from the room that may contain work product and/or attorney-client privileged information at the end of each day. Materials inadvertently left in the review room do not operate as a waiver of the attorney work product doctrine or any other applicable privilege and shall be returned to the owner promptly. The Producing Party shall not be responsible for any items left in the review room.

(f)     Other than as provided herein, the Receiving Party will not copy, remove, or otherwise transfer any RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material from the Secure Computer including, without limitation, copying, removing, or transferring the Material onto any other computers or peripheral equipment. The Receiving Party will not electronically transmit any RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY Material in any way from the Producing Party's facilities or the offices of its outside counsel of record. This provision does not prevent the Parties from including RESTRICTED  CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material in filings with the Court made under seal. Unless otherwise agreed by the Producing and Receiving Parties, service copies of such filings must be served via secure FTP or FedEx.

(g)     The Receiving Party's outside counsel of record may make no more than two (2) additional paper copies of any portions of the Original Printouts of RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material received from a Producing Party pursuant to Paragraph 12(c), not including copies attached to court filings or used at  depositions. The Receiving Party's outside counsel of record shall maintain a complete log of Bates numbers of printed RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY  Material that lists the individuals who have reviewed and/or received paper copies of such Material, including the Bates number(s) of the copy and when it was provided to that person, and produce that log within five (5) business days of a Producing Party's written request. In addition, any outside experts or consultants of the Receiving Party with access to RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall not make any use of the Material for any purpose other than this Action.

(h)     The Receiving Party's outside counsel of record and any person receiving a copy of any RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall maintain and store any paper copies of the Material at their offices in a manner that prevents

duplication of or unauthorized access to the Material, including, without limitation, storing the Material in a locked room or cabinet at all times when it is not in use.

(i)     All paper copies of RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material shall be securely destroyed in a timely manner if they are no longer in use (*e.g.,* at the conclusion of a deposition). Copies of any such Material that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. If the deposition exhibit has been marked up or altered in any way by the deponent, the Receiving Party shall store the exhibit in the same way paper copies of the RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material are stored.

Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material from any paper copy of Material for use in any manner (including by way of example only, the Receiving Party may not scan the Material to a PDF or photograph the Material). Paper copies of the Original Printouts also may not be converted into an electronic document, and may not be scanned using optical character recognition ("OCR") technology. However, a Receiving Party may make and use images of portions of the Material if reasonably necessary for court filings, expert reports, discovery responses, and other similar documents. In preparing such documents, a Receiving Party shall not transmit RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material or any summaries of such documents that are in electronic form (e.g., PDF, TIFF, Word, Excel files) outside of the Receiving Party (*e.g.*, in e-mail traveling on the Internet) unless the documents or summaries are encrypted using PGP© encryption with a pass phrase whose length is at least 10 characters. All such documents shall be clearly marked "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY Material." Unless agreed by the Producing Party, images

or copies of the Material shall not be included in any correspondence (references to production numbers shall be used instead).

### Disclosure to Experts or Non-Party Consultants

14.    An independent expert's or consultant's access to Protected Matters shall be subject to the terms in this paragraph, including the notice-and-objection provisions below, and the requirement that the expert or consultant execute the Confidentiality Undertaking attached hereto as Exhibit A. The Party that retained the expert or consultant shall retain the Confidentiality Undertaking and must provide a copy to every Producing Party whose Protected Matters the expert or consultant might access, prior to such access.

(a)    Before a Receiving Party may disclose, directly or indirectly, any Protected Matters to an independent expert or consultant, the Receiving Party must give written notice to the Producing Party of the following information as it relates to the expert or consultant:

(i)    current curriculum vitae, including the full name of the individual and the city and state of his or her primary residence;

(ii)    business address and title;

(iii)    nature of business or profession;

(iv)    any previous or current relationship (personal or professional) with any of the Parties or any prior assignees of any of the asserted patents that also manufacture or sell solid state drives;

(v)    a listing of other actions (including case name, case number, and court/agency) in which the individual has testified (at trial, deposition or in a hearing) over the last four years;

(vi)    the individual's current employer;

(vii)    all companies for which the individual has consulted or been employed by, within the past four years, the years of such consulting or employment and brief

description of the work performed for any position that the individual directly worked on managing data in non-volatile memory; and

(viii)   a copy of the expert's or consultant's signed Confidentiality Undertaking (in the form attached hereto as Exhibit A). A separate Confidentiality Undertaking shall not be required for staff members working under the supervision of an individual signing a Confidentiality Undertaking in the form of Exhibit A. An individual signing a Confidentiality Undertaking in the form of Exhibit A, however, shall accept full responsibility for taking measures to ensure that staff members working under his or her supervision comply with terms of this Protective Order.

(b)      A Party that makes a written notice and provides the information specified in the preceding paragraph may disclose the Protected Matters to the identified expert or consultant unless, within five business (5) days of the written notice, the Producing Party objects in writing.

(c)      If an objection is made, the Producing and Receiving Parties shall meet and confer to try to resolve the dispute by agreement. If no agreement is reached within five (5) business days, the Producing Party may move the Court for an order that access to Protected Matters be denied the designated individual, or other appropriate relief within five (5) additional business days. If the Producing Party moves the Court for relief, unless and until the Court determines otherwise, no disclosure of any such Protected Matters shall be made by the Receiving Party to any expert or consultant to whom an objection has been made. If the Producing Party does not move the Court for relief within five (5) business days, the Receiving Party may disclose the Protected Matters to the identified expert or consultant.

**Inadvertent Failure to Designate**

15.      If, through inadvertence, a Producing Party in a lawsuit governed by this Protective Order provides any information without marking the information as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED

CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," the Producing Party may subsequently inform the Receiving Party of the specific designation of the disclosed information, and the Receiving Party shall treat the disclosed information as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material upon receipt of written notice from the Producing Party. To the extent the Receiving Party has already disclosed such information, the Receiving Party shall use its best efforts to promptly collect any copies of disclosed material that have been provided to individuals other than those authorized under this Protective Order, and if collected, shall destroy or return them to the Producing Party.       Inadvertent    or    unintentional    production    of "CONFIDENTIAL,"    "CONFIDENTIAL    –    OUTSIDE    COUNSEL'S    EYES    ONLY," or    "RESTRICTED    CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material that is not so designated shall not be deemed a waiver in whole or in part of a claim for treatment as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY," or    "RESTRICTED    CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY."

### Prosecution Bar

16.    Any Material designated CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY that is related to managing data in solid state drive technologies, other than non-technical information, such as financial or licensing information, or any material designated RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY is subject to a PROSECUTION BAR. Absent written consent from the Producing Party, this PROSECUTION BAR means that any person employed or retained by the Receiving Party in this Action who has received and reviewed the Producing Party's Material described above shall not be Involved In The Prosecution Of Patents Or Patent Applications relating to managing data in solid state drive technologies from the time the affected individual first reviewed such Material through and including two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims and

dismissal with or without prejudice in this Action. In addition, a person subject to this PROSECUTION BAR can participate or assist in a reexamination or review (including *inter partes* or post-grant review) by the United States Patent and Trademark Office of a patent asserted by Plaintiff in this Action, provided that such participation or assistance shall not include suggesting, drafting, or amending patent claim language.

17.     To minimize the risk of inadvertent disclosure, any party defending a patent in a reexamination or review that intends to seek claims amendments or new claims must erect an ethical wall between the attorney(s) who received "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material and the attorney(s) who are involved in seeking to amend the claims or prepare new claims in the proceeding. This PROSECUTION BAR shall begin when access to designated "CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" Material is first received by the affected individual and shall end one (1) year after final termination of this action.

## Privilege/Work Product

18.     The Parties agree to make a good-faith effort to provide a privilege log. The Parties further agree that the following information need not be included on a privilege log: documents, communications and other information (1) regarding selection of counsel; (2) regarding activities undertaken in compliance with the duty to preserve information pursuant to Fed. R. Civ. P. 26(b)(3)(A) and (B); or (3) generated after the filing of the complaint in this lawsuit.

19.     If a Producing Party inadvertently produces a document or tangible item that it later discovers or in good faith asserts to be privileged, protected by the work product doctrine, or subject to some other immunity from disclosure ("Privileged Material") the production of that Privileged Material shall not be deemed to constitute a waiver of any applicable privileges, work product protection, or immunity from disclosure. In such circumstances, upon discovery of the inadvertent

disclosure, the Producing Party shall immediately notify the Receiving Party of the inadvertent production, and request either the return or confirmation of destruction of the Privileged Materials. Within five (5) business days of receiving such notification, the Receiving Party shall return or confirm destruction of all such materials, except for one copy to be used solely for the purpose of challenging the privilege of mistaken production. Such return or confirmation of destruction shall not preclude the Receiving Party from seeking to compel production of the materials within twenty-one (21) business days of receiving such notification or at such other time as the Parties agree to in writing, and shall not constitute an admission by the Receiving Party that the materials were, in fact, privileged or otherwise protected in any way. The Producing Party shall retain the Privileged Material for submission to the Court in the event the Receiving Party moves to compel. Summaries of inadvertently produced documents shall be destroyed by the Receiving Party within twenty-one (21) business days if a motion to compel is not brought or is denied.

20.     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Matters to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Producing Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Matters, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and (d) request such person or persons to execute the "Confidentiality Undertaking" that is attached hereto as Exhibit A. Unauthorized or inadvertent disclosure does not change the status of Protected Matters or waive the right to hold the disclosed document or information as Protected Matters.

## **Third Party Requests**

21.     If any Receiving Party under the terms of this Protective Order receives a subpoena, order, or other legal process commanding the production of such Protected Matters (a "Third Party Request"), such Receiving Party shall not produce any Protected Matters in response to the Third Party Request without the prior written consent of the Producing Party or an order of a court of

22

competent jurisdiction, except as otherwise provided by this paragraph. A Receiving Party receiving a Third Party Request shall promptly notify the Producing Party of such Third Party Request, in writing (by e-mail or fax, if possible) immediately and in no event more than three (3) business days after receiving the Third Party Request. Such notification must include a copy of the subpoena or court order. The Receiving Party also must immediately inform in writing the Party who sent the Third Party Request that some or all the material covered by the Third Party Request is the subject of this Protective Order and include a copy of this Protective Order. The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Producing Party in this action an opportunity to protect its confidentiality interests in the court from which the Third Party Request issued. The Producing Party shall bear the burdens and the expenses of seeking protection of its confidential material in that court. Nothing in these provisions should be construed as requiring a Receiving Party in this Action to disobey a lawful directive from another court.

22.     Other proceedings: By entering this Protective Order and limiting the disclosure of information in any lawsuit governed by this Protective Order, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this Protective Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

### A Non-Party's Protected Material Sought to Be Produced in This Litigation

23.     The terms of this Protective Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL," "CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY" or "RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY". Such information produced by Non-Parties in connection with this Action is

protected by the remedies and relief provided by this Protective Order. Nothing in these provisions

should be construed as prohibiting a Non-Party from seeking additional protections.

(a)    In the event that a Party is required, by a valid discovery request, to produce a

Non-Party's Confidential Information in its possession, and the Party is subject to an agreement with

the Non-Party not to produce the Non-Party's Confidential Information, then the Party shall:

(i)    promptly notify in writing the Non-Party that some or all of the Non-

Party's Confidential Information is subject to a discovery request;

(ii)    promptly provide the Non-Party with a copy of the Protective Order in

this Action, the relevant discovery request(s), and a reasonably specific description of

the information requested; and

(iii)    make the information requested available for inspection by the Non-

Party.

(b)    If the Non-Party fails to object or seek a protective order from this Court

within the time period provided for in the agreement with the Non-Party not to produce the Non-

Party's Confidential Information, or if no time period is provided, within 14 days of receiving the

notice and accompanying information, the party receiving the discovery request may produce the

Non-Party's Confidential Information responsive to the discovery request. If the Non-Party timely

seeks a protective order, the party receiving the discovery request shall not produce any information

in its possession or control that is subject to the confidentiality agreement with the Non-Party before

a determination by the Court. Absent a court order to the contrary, the Non-Party shall bear the burden

and expense of seeking protection in this Court of its Material.

## Discovery From Experts and Consultants

24.    Discovery of materials from experts and consultants will be subject to the following

limitations:

(a)    The following materials will be excluded from expert discovery or inquiry at

trial: (1) draft expert reports or declarations and outlines thereof; (2) documents or notes prepared by testifying experts or their assistants, except for those that form or provide a basis for the expert's opinion; (3) communications between testifying experts, or their assistants, and outside counsel of record, except for those which form or provide a basis for the expert's opinion; and (4) communications between testifying experts, or their assistants, and other experts or consultants (testifying or not), except for those which form or provide a basis for the expert's opinions.

(b) Notwithstanding the foregoing, (1) all documents provided or made known to experts (including, without limitation, publications and documents produced in discovery), other than those generated for the purpose of litigation and/or for the purpose of communicating with the expert, that were considered by the expert in formulating his or her opinion (whether or not they support the opinions), (2) the amount of time an expert spent on the litigation, and (3) the compensation received by the expert for his work on the litigation are discoverable and may be the subject of questioning at deposition or trial.

25.     No discovery relating to work performed for this litigation can be taken from any non-testifying consultant except to the extent that the consultant has provided information or opinions that form a basis for a testifying expert's opinion.

## **Termination of Lawsuit**

26.     After termination of this Action, the provisions of this Protective Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the Parties and recipients of the Protected Matters for enforcement of the provisions of this Protective Order following termination of this Action.

27.     Within sixty (60) days after final termination of this Action by dismissal, judgment, or settlement, counsel for the Party or Parties to this Action receiving Protected Matters shall return or destroy the Protected Matters and all copies thereof, and will destroy all documents and things

containing information based on such Protected Matters, including all hard copy print of the Source Code Material, except that counsel for each Party may retain one hard copy and one electronic copy (excluding back-up copies maintained on storage systems in the regular course of business) of (i) its correspondence file of this case; (ii) its pleadings file, including all briefs, memoranda, affidavits, supporting materials, and all papers served on the Party; (iii) any briefs and appendices on appeal; (iv) all legal research memoranda, expert communications, work product or report, and other work product; (v) its file of deposition transcripts and accompanying exhibits; and (vi) its file of hearing and trial transcripts and accompanying exhibits.

28.     Nothing in the preceding paragraph requires destruction of data on outside counsel's back-up tapes for archival purposes.  Protected Material should not be stored on back-up tapes beyond what is authorized in Paragraph 27.

29.      This Protective Order shall be binding upon the Parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control. The terms of this Protective Order shall survive the final termination of this action to the extent that any Protected Matters are not or do not become known to the public (or to the extent that any Protected Matters have become known to the public due to a violation of this Protective Order). This Court shall retain jurisdiction over this action for the purpose of enforcing this Protective Order.

### Miscellaneous

30.     If any Party violates the terms of this Protective Order, the Party violating this Order shall be subject to sanctions, or any other remedies as appropriate, as ordered by the Court.

31.     Nothing in this Protective Order imposes an affirmative obligation on a Party to make discovery of any particular document, data, or other information.

32.     Nothing in this order will be construed to limit in any way any Party's use of its own

Protected Matters nor will it affect any Party's subsequent waiver of its own prior designation with respect to its own Protected Matters.

33.     Nothing in this Protective Order shall bar or otherwise restrict any attorney herein from rendering advice to his client with respect to this Action and, in the course thereof, referring to or relying upon his examination of Protected Matters produced by another Party or a Non-Party; provided, however, that in rendering such advice and in otherwise communicating with his client, the attorney shall not make specific disclosure of any item of the Protected Matters that such person is prohibited from seeing.

ORDERED this_____29th_____day of October __, 2020.

**ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**